**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| James D. Wren, | Case No. 25-cv-3623 (JMB/LIB) |
| Plaintiff, | |
| v. | **Report and Recommendation** |
| Minnesota Department of Corrections, et al., | |
| Defendants. | |

---

Pursuant to a general assignment made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon review of Plaintiff's Complaint, [Docket No. 1]. For the reasons explained below, the Court recommends dismissing part of this action and permitting the remainder of this action to proceed as detailed below.[1]

## I.    Background

Plaintiff is presently incarcerated at Minnesota Correctional Facility–Stillwater ("MCF–Stillwater") in Bayport, Minnesota. (See Compl. [Docket No. 1] at 20). The Complaint's allegations[2] center on a practice, started by the Minnesota Department of Corrections ("DOC") in mid-2024, of using a "national guard ion scanner" (or "trunarc scanner") to detect drugs on incoming mail and inmate papers. (Id. at 6; see also, e.g., Id. at 1–2, 11). Plaintiff alleges that these

---

[1] The Court will issue a separate order granting Plaintiff's application to proceed in forma pauperis and directing service on the remaining Defendants.

[2] Plaintiff has attached over 80 pages of exhibits to his Complaint, (see Exhibits [Docket No. 1-1]), presumably to provide additional detail or evidence. While a plaintiff may attach exhibits, doing so does not relieve him of the obligation to clearly plead his allegations and claims in the complaint itself. Courts in this District routinely hold that it is not a court's role to comb through exhibits or other filings to locate allegations or causes of action for a plaintiff. See, e.g., Devisme v. Ctr. City Hous. Co., No. 22-cv-1472 (ECT/LIB), 2022 WL 2759092, at *1 n.1 (D. Minn. July 14, 2022) (citing cases); Edner v. Dietrich, No. 22-cv-70 (JRT/LIB), 2022 WL 981367, at *4 n.7 (D. Minn. Feb. 24, 2022) (same), aff'd in part, appeal dismissed in part, No. 22-1664, 2022 WL 4483131 (8th Cir. Aug. 9, 2022); Jackson v. Hennepin Hosp., No. 19-cv-2392 (PJS/ECW), 2020 WL 532973, at *1 n.3 (D. Minn. Jan. 3, 2020) (same), report and recommendation adopted, 2020 WL 528898 (D. Minn. Feb. 3, 2020).

handheld tests are intended only for initial screenings and that the manufacturer warns they are susceptible to false positives and should be confirmed by laboratory testing. (See Id. at 3–4). Nevertheless, DOC officials have allegedly relied on unconfirmed "presumptive positive" results to punish inmates. (Id. at 4; see also Id. at 5, 10). Plaintiff alleges that DOC staff have unfettered discretion to decide what to test, at times for retaliatory reasons, and that even innocent items like blank paper or envelopes have triggered false positives. (See Id. at 4–6). Plaintiff points to litigation in Massachusetts in which plaintiffs alleged that similar tests were unreliable and the court there likened them to being "'only marginally better than a coin[-]flip.'" (Id. at 3 (quoting Green v. Mass. Dep't of Corr., No. 2184CV02283C, 2021 WL 6335670, at *5 (Mass. Super. Nov. 30, 2021)). Plaintiff alleges that "DOC officials know, or should known," of these problems with the tests. (Id.).

Plaintiff alleges that he was personally mistreated because of the tests in July 2024. (See Id. at 8). At that time, "DOC staff" (including Defendant "Sgt. Gary") searched Plaintiff's cell with a K9 unit. (Id. at 7–8). Gary found two small scraps of paper, tested them using an ion scanner, and obtained a "presumptive positive" result for narcotics. (See Id. at 8–9). Plaintiff, however, immediately took a breathalyzer test (which registered "all zeros") and provided a urine sample, which also "returned clean." (Id. at 8). Despite the absence of drugs in Plaintiff's system, prison officials placed him in administrative segregation and "confiscated" his legal materials, which Plaintiff describes as "thousands of pages of court documents related to his criminal case and ongoing appeals." (Id.).

Plaintiff alleges that Gary handled multiple inmates' papers during the search without changing gloves or cleaning the testing area, likely cross-contaminating the paper scraps with drug residue from another inmate's property. (See Id.). Plaintiff also alleges that the "two pieces of

paper" were "fabricated or planted." (Id.). At his disciplinary hearing, officials did not produce these paper scraps as evidence, and when Plaintiff (and his attorney) asked to send the items to an outside lab for confirmation testing, officials denied the request. (See Id.). Prison staff also did not tell Plaintiff why his cell was targeted for this shakedown in the first place. (See Id. at 9).

As for Plaintiff's legal files, he alleges that they were not returned to him. (See Id. at 10). Instead, prison staff claimed they would photocopy all his documents and either send the originals out of the prison or destroy them. (See Id. at 9). Plaintiff alleges that the photocopies he received were largely unusable: many pages were illegible, "out of order," cut off, or even blank. (Id.). Further attempts at copying were allegedly no better. (See Id.). As a result, Plaintiff claims, he effectively lost access to his legal materials, which hindered his ability to participate in his ongoing court appeals. (See Id. at 10).

Plaintiff remained in solitary confinement pending discipline for the incident described above. (See Id. at 9). After a disciplinary hearing, officials found him guilty of possessing contraband based on the unconfirmed test. (See Id. at 10). The punishments included 90 days in segregation, loss of all visitation privileges, termination of phone access, loss of prison-job and program opportunities, and a change to a "more restrictive custody level." (Id.). Warden William Bolin rejected Plaintiff's request for a laboratory test of the supposed drug evidence, responding in an August 2024 letter that Plaintiff "did not have a right to confirmatory testing." (Id.). Plaintiff alleges that, as a result of these events, he suffered significant harm: he lost his prison employment, lost personal property (including irreplaceable family photographs and obituaries), was cut off from contact with family, and endured solitary confinement. (See Id. at 10–11). He also nearly missed court deadlines because the confiscation and disarray of his legal papers impeded his ability to litigate his cases. (See Id. at 9–11).

3

Plaintiff further alleges that the DOC's handling of legal mail violated his rights. (See Id. at 13–14). According to the Complaint, MCF–Stillwater officials have treated legal mail as regular mail despite its confidential nature. (See Id.). Staff allegedly open and copy incoming legal mail outside the relevant inmate's presence, then deliver the copies with the normal mail late at night. (See Id. at 13). On some occasions, Plaintiff alleges, officials have returned legal mail (including his own) to senders without notice to the inmate. (See Id. at 14). Plaintiff alleges that these practices interfere with attorney-client confidentiality and impede inmates' access to legal counsel. (See Id.). For example, he alleges that his own mail from a federal judge and a city attorney was opened or mishandled in this way, "causing confusion" and "miss[ed] time limits" on unspecified legal actions. (Id. at 13–14).

Finally, Wren alleges that certain officers harassed and targeted him beyond the incident described above. (See Id. at 15). In particular, Defendant "Lt. Terra O'Connor" (who also serves as a watch commander) and other unspecified Defendants allegedly searched Plaintiff's cell repeatedly and sent him to segregation on other occasions for charges that were later dropped. (See Id. at 15–16). Plaintiff also alleges that O'Connor tried, without cause, to strip him of his inmate mentor job, which would have confined him to his cell 22 hours a day. (See Id. at 16).

The Complaint names seven defendants: the DOC; MCF–Stillwater itself; Paul Schnell, the DOC's commissioner; Bolin; Gary; O'Conner; and "Lt. Jenny Carufel." The Complaint also presents seven counts. (See Id. at 11–17). Count I ("Right to Counsel") argues that DOC officials, under Schnell, frustrated Plaintiff's right to counsel and right of access to the courts by drug-testing legal mail with unreliable tests and treating positives as grounds for immediate, severe sanctions. (See Id. at 11–12). Count II ("Due Process") alleges violations of the Fourteenth Amendment and Minnesota's analogous constitutional provisions based on various conduct. (See Id. at 12–14).

4

Count III ("Negligence") alleges that Defendants had a duty to use reliable testing and follow confirmatory testing policies, knew of high false positives, yet relied on faulty results, foreseeably harming Plaintiff. (See Id. at 14–15).

Count IV ("Discrimination") alleges arbitrary unequal treatment with respect to Plaintiff's legal records. Staff allegedly copied only "a certain few" documents and forced Plaintiff to send out originals, leaving him with poor copies; other prisoners, he suggests, were able to keep originals. (Id. at 15). Count V ("Harassment") discusses the alleged continued targeting of Plaintiff by O'Connor. (See Id. at 15–16). Count VI ("Right to Use the Courts") contends that Plaintiff's loss of his legal records impaired active federal and state cases. (See Id. at 16). Finally, Count VII alleges unconstitutional policies or customs (i.e., Monell[3] claims) and a §1985(3) conspiracy: Defendants supposedly acted together to "target Plaintiff and cover for each other." (Id.).

For relief, Plaintiff seeks compensatory and punitive damages from all Defendants. (See Id. at 17–19). He also seeks declaratory and injunctive relief. He seeks a declaration that Defendants' actions violated his rights under the federal and Minnesota constitutions. (See Id. at 19). He also seeks an injunction to prohibit the DOC from "subjecting [him] to" the "practices described in this Complaint," as well as injunctions requiring that MCF–Stillwater perform "confirmation testing" on any positive ion-scanner results through confirmatory lab testing, that MCF–Stillwater staff stop opening legal mail outside inmates' presence, and that the DOC reconsider or expunge past disciplinary actions based on unconfirmed tests. (Id. at 19–20). Plaintiff also requests restoration of any good-time credits lost as a result of unconfirmed ion-scanner tests. (See Id. at 19).

---

[3] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (discussing so-called Monell claims).

## II.    Analysis

Rather than pay this action's filing fee, Plaintiff has applied for in forma pauperis ("IFP") status, and his application suggests that as a financial matter, he might well qualify for IFP status. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an IFP matter] at any time if the court determines that . . . the action . . . is frivolous [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also, e.g., Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Neitzke). Courts in this District routinely dismiss complaints as factually frivolous when they do not explain how a defendant's actions could create liability. See, e.g., Yang v. Minn. Dep't of Corr.-Stillwater, No. 25-cv-0542 (JMB/DTS), 2025 WL 1238087, at *2 (D. Minn. Mar. 24, 2025) (citing cases), report and recommendation adopted, 2025 WL 1235410 (D. Minn. Apr. 29, 2025); Nelson v. Ellison, No. 23-cv-2122 (JRT/LIB), 2023 WL 7741273, at *3 (D. Minn. Oct. 27, 2023), report and recommendation adopted, 2023 WL 7697051 (D. Minn. Nov. 15, 2023).

When determining if a complaint states a claim on which a court may grant relief, a district court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See, e.g., Varga v. U.S. Bank Nat'l Ass'n, 764 F.3d 833, 836 (8th Cir. 2014) (citing Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint's factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A district court's consideration of whether a

pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." Id. at 679; see also, e.g., Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (making same points (quoting Magee v. Trs. of Hamline Univ., 747 F.3d 532, 535 (8th Cir. 2014))).

In considering a motion to dismiss aimed at a pro se complaint, the Court must "liberally construe[]" the pro se complaint because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 94 (2007); see Sandknop v. Mo. Dep't of Corrs., 932 F.3d 739, 742 (8th Cir. 2019) (quoting Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)); Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) (citing Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980)). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see Martin, 623 F.2d at 1286. Pro se complaints "still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

### A.     Eleventh Amendment Immunity

Two defendants fall out of this action immediately because of the Eleventh Amendment. Under that Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Notwithstanding this "another State" wording, it is well established that the Eleventh Amendment also bars suits by a state's own citizens. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1 (1890)); Klingler v. Dir., Dep't of Revenue, 455 F.3d 888, 893 (8th Cir. 2006) (same). The

Eleventh Amendment's protections also apply to state agencies. See, e.g., Pennhurst State Sch. & Hosp., 465 U.S. at 100 (citing authorities); Wolk v. City of Brooklyn Ctr., 107 F.4th 854, 858 (8th Cir. 2024) (citing Holloway v. Conger, 896 F.2d 1131, 1136 (8th Cir. 1990)). The upshot here is that Plaintiff's claims against the DOC and MCF–Stillwater (regardless of the relief sought) should be dismissed based on state sovereign immunity. The Court therefore recommends dismissing those claims without prejudice.[4]

The Complaint also purports to sue all of the individual Defendants in their official capacities. (See Compl. [Docket No. 1] at 5–6). Suits against individuals in their official capacities function as suits against those individuals' employers. See, e.g., Barnett v. Short, 129 F.4th 534, 540 (8th Cir. 2025) (citing Zajrael v. Harmon, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam)). Accordingly, the Complaint's official-capacity claims amount to claims against the State of Minnesota. Any official-capacity claims by Plaintiff against the individual Defendants should therefore be dismissed to the extent they seek monetary damages or other retrospective relief. See Id. To the extent Plaintiff seeks prospective injunctive relief against the individual Defendants in their official capacity with the State of Minnesota, the Court will assume for present purposes that the Ex parte Young exception may apply. See, e.g., Minn. Chapter of Associated Builders & Contractors v. Ellison, 153 F.4th 695, 698–99 (8th Cir. 2025) (discussing Ex parte Young exception).

---

[4] State sovereign immunity has exceptions: a state can waive sovereign immunity, and Congress in certain situations can abrogate the immunity. See, e.g., EEE Mins., LLC v. North Dakota, 81 F.4th 809, 815 (8th Cir. 2023) (citing Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 253 (2011)). But Minnesota has not waived its immunity for § 1983 claims, and it is well established that § 1983 did not abrogate state sovereign immunity. See, e.g., Roe v. Nebraska, 861 F.3d 785, 789 (8th Cir. 2017) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66–67 (1989)).

## B.      Claims Against Carufel

The Complaint does not allege any conduct by Defendant Carufel that might trigger liability to Plaintiff, and he does not appear to assert any claim specifically against Defendant Carufel. There are simply no factual allegations regarding alleged conduct by Defendant Carufel. The Court therefore recommends dismissing the Complaint, as frivolous, to the extent it brings claims against Carufel. See Yang, 2025 WL 1238087, at *2; Nelson, 2023 WL 7741273, at *3.

## C.      Count IV

As the Court understands Count IV, Plaintiff means to press a claim under the Fourteenth Amendment's Equal Protection Clause, under which "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This clause "generally requires the government to treat similarly situated people alike." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994); see also, e.g., Cherry v. MCF-Moose Lake, No. 22-cv-2012 (JRT/JFD), 2023 WL 1767832, at *5 (D. Minn. Jan. 17, 2023) (quoting Klinger), report and recommendation adopted, 2023 WL 1767303 (D. Minn. Feb. 3, 2023).

Equal-protection claims fall into two main categories. See, e.g., Engquist v. Ore. Dep't of Agr., 553 U.S. 591, 601–02 (2008). The first involves "governmental classifications that 'affect some groups of citizens differently than others.'" Id. (quoting McGowan v. Maryland, 366 U.S. 420, 425 (1961)); see also, e.g., Gilmore v. Cnty. of Douglas, 406 F.3d 935, 937 (8th Cir. 2005). In these cases, plaintiffs "allege that they have been arbitrarily classified as members of an 'identifiable group'" and then subjected to unequal treatment." Engquist, 553 U.S. at 601 (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)); see also, e.g., Jidoefor v. City of Minneapolis Police Dep't, No. 22-cv-1686 (KMM/TNL), 2023 WL 2823159, at *2 (D. Minn. Apr. 7, 2023). Plaintiff does not successfully plead this type of equal-protection claim because the

9

Complaint does not assert that he belongs to any protected class or that Defendants acted based on race, religion, national origin, or any suspect classification.

The second type of equal-protection claim is a "class of one" claim. Engquist, 553 U.S. at 601–02 (discussing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). In these claims, "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Id. (quoting Olech, 528 U.S. at 564). To bring this type of claim, however, a plaintiff must allege that he is "'similarly situated to others who allegedly received preferential treatment.'" Sanimax USA, LLC v. City of S. St. Paul, 95 F.4th 551, 564 (8th Cir. 2024) (quoting Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015)). Critically, a plaintiff must provide a "specific and detailed account" of how others were favored. Higgins Electric, Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1129 (8th Cir. 2016) (quoting cases; cleaned up); see also Myers v. Kleffman, No. 24-cv-3890 (JMB/LIB), 2024 WL 5301741, at *3 (D. Minn. Nov. 19, 2024) (quoting Higgins Electric), report and recommendation adopted, 2025 WL 48643 (D. Minn. Jan. 8, 2025). This presents a "significant hurdle," as "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects"—and without such allegations, "a class-of-one claim must fail." Sanimax USA, 95 F.4th at 564 (quoting Robbins, 794 F.3d at 996 (quotation marks removed). Plaintiff fails to plead this type of equal-protection claim as well; there is simply no "specific and detailed account" of other inmates being treated differently than him.

Therefore, the undersigned recommends that Plaintiff's equal-protection claim (Count IV) be dismissed without prejudice in its entirety for failure to state a claim.

10

**D.      Count VII**

Count VII of the Complaint is titled "Civil Rights Violations Monell v. Dept. of Social Services / Civil conspiracy claims under 42 U.S.C. 1985(3) against all defendants." (Compl. [Docket No. 1] at16). The Court construes Count VII as raising two types of claims, but neither is sufficiently plead to proceed here.

The Court first addresses Count VII's Monell claim. Under Monell, a local government (like a city or county) can be liable under § 1983 if an official policy or widespread custom caused a constitutional violation. See, e.g., Monell, 436 U.S. at 694. But Monell does not apply to states or state agencies, because they are not "persons" under § 1983 and so are immune from § 1983 claims. See, e.g., Will, 491 U.S. at 71; Braun v. Minnesota, No. 22-cv-0710 (JRT/JFD), 2022 WL 17038976, at *3 (D. Minn. Nov. 17, 2022) (citing cases, including Will). The DOC and MCF–Stillwater are state agencies or subunits, so Plaintiff cannot use a Monell theory to hold them liable in damages.

Plaintiff has also sued Schnell and others in their official capacities for injunctive relief, which is the appropriate way to challenge an alleged unconstitutional policy by a state entity. So to the extent Count VII asserts that the DOC has certain unconstitutional policies, that issue arises as needed through Counts I, II, and VI themselves, which the Court does not presently recommend dismissing. Plaintiff's separate Monell claim is therefore duplicative. The Court therefore recommends dismissing the Monell aspect of Count VII.

As for the Complaint's reference to § 1985(3), that statute prohibits conspiracies to deprive a person of equal protection of the laws or equal privileges and immunities, if motivated by some class-based, invidiously discriminatory animus. See, e.g., Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–78 (1993) (discussing statute). To plead a § 1985(3) claim, a plaintiff

11

must allege "(1) a conspiracy, (2) for the purpose of depriving another of the 'equal protection of the laws, or of equal privileges and immunities under the laws;' (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." Federer v. Gephardt, 363 F.3d 754, 757–58 (8th Cir. 2004) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)). A § 1985(3) claim also requires allegations of "a class-based animus." Id. at 758 (citing Griffin, 403 U.S. at 102).

The Complaint here has two fatal problems. First, Plaintiff's conspiracy allegations are, at best, conclusory. He simply asserts, for instance, that he "believes that all defendants conspired and acted together to target Plaintiff and cover for each other." (Compl. [Docket No. 1] at 16). But he provides no factual detail suggesting an agreement or meeting of the minds. Second, Plaintiff fails to allege any sort of required class-based animus. As a result, the Court recommends dismissing Count VII's § 1985(3) conspiracy claim.

Therefore, the undersigned recommends that Plaintiff's Monell claim and 1985(3) claim (together Count VII) be dismissed without prejudice in its entirety for failure to state a claim.

### E.      Summary

Under the discussion above, the Court recommends that this action be dismissed to the extent it brings any claims against the DOC; any claims against "Minnesota Correctional Facility Stillwater"; any official-capacity claims for damages or other retrospective relief against Defendants Paul Schnell, William Bolin, "Sgt. Gary," Jenny Carufel, and Terra O'Connor; and any individual-capacity claims against Carufel. The Court also recommends dismissing Counts IV and VII of the Complaint for failure to state a claim.

The Court does not here recommend the dismissal of Plaintiff official-capacity claims for injunctive relief as found in Counts I, II, III, V, and VI as alleged against Defendants Paul Schnell,

William Bolin, "Sgt. Gary," and Terra O'Connor. Likewise, the Court does not here recommend the dismissal of Plaintiff's individual-capacity claims (regardless of the relief sought) as found in Counts I, II, III, V, and VI as alleged against Defendants Paul Schnell, William Bolin, "Sgt. Gary," and Terra O'Connor. By separate order, the Court will initiate service on the Defendants that remain in this action.[5]

### III.   Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Plaintiff James D. Wren Complaint, [Docket No. 1], be **DISMISSED without prejudice**, for lack of jurisdiction, to the extent that it brings (1) claims against the Minnesota Department of Corrections, (2) claims against the "Minnesota Correctional Facility Stillwater," and (3) official-capacity claims for monetary damages or other retrospective relief against Defendants Paul Schnell, William Bolin, "Sgt. Gary," Jenny Carufel, and Terra O'Connor.

2.  The Complaint be **DISMISSED without prejudice**, as frivolous, to the extent it brings claims against Defendant Carufel in her individual capacity.

3.  Counts IV and VII of the Complaint be **DISMISSED without prejudice** for failure to state a claim.

Dated: January 5, 2026                              s/Leo I. Brisbois
                                                    Hon. Leo I. Brisbois
                                                    United States Magistrate Judge

---

[5] Notwithstanding this Report and Recommendation, the remaining Defendants, once served with process in this action, may respond in any fashion permitted by the Federal Rules of Civil Procedure, including any motion under Rule 12 they deem advisable.

13

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).